**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-23385-RAR**

**NOSLEN SENDRA GONZALEZ,**

Petitioner,

v.

**MIAMI ICE FIELD OFFICE DIRECTOR,**

Respondent.
_______________________________________________/

# ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Noslen Sendra Gonzalez's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on May 14, 2026. Petitioner filed an Amended Petition ("Amended Petition"), [ECF No. 7], on May 22, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his immediate release. *See* Am. Pet., Prayer for Relief. On June 5, 2026, Respondent filed a Response to Petitioner's Amended Petition ("Response"), [ECF No. 9]. Petitioner subsequently filed a Reply, [ECF No. 11], on June 10, 2026. On August 30, 2026, Petitioner filed a Supplemental Declaration, [ECF No. 13]. The Court directed Respondent to respond to Petitioner's Supplemental Declaration, *see* [ECF No. 14], and Respondent filed a Response ("Supplemental Declaration Response") on September 11, 2026, [ECF No. 17]. The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED** as set forth herein.

## BACKGROUND

Petitioner is a Cuban national that arrived in the United States in 2015. Am. Pet. ¶ 20. Petitioner applied for asylum following his arrival. *Id.* ¶ 21. After his asylum application was

denied, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba. *Id.* Following the entry of that removal order, Petitioner was detained for approximately six months before he was released under an Order of Supervision ("OSUP"). *Id.*

Years later, on August 20, 2024, Petitioner filed a Form I-485 application for adjustment of status under the Cuban Adjustment Act and a concurrently filed a Form I-601 waiver application. Am. Pet. ¶ 23. Both applications remain pending before U.S. Citizenship and Immigration Service (USCIS). *Id.* After Petitioner was hospitalized for diabetes-induced pancreatitis in October 2025, he moved to reopen his removal proceedings. *Id.* ¶ 24. An IJ denied his motion on February 2, 2026. *Id.*

While his motion to reopen was pending, Petitioner was detained on November 12, 2025. Am. Pet. ¶ 25. He was initially placed at Florida Soft Side South Detention Center, during which time he filed an earlier petition in the Middle District of Florida challenging his detention. *Id.* ¶ 5 (citing *Sendra Gonzalez v. Warden of Alligator Alcatraz*, 26-cv-274 (M.D. Fla March 30, 2026)). However, his previous petition was denied as premature because he had not yet attained six continuous months in custody. *Id.* Petitioner maintains that he has been detained for over six months and did not receive post-order custody reviews at the 90- and 180-day marks. *Id.* ¶ 6, 27. He filed the instant Petition, [ECF No. 1], on May 14, 2026. He filed an Amended Petition, [ECF No. 7], on May 22, 2026. Petitioner subsequently filed a Supplemental Declaration on August 30, 2026, [ECF No. 13].

Petitioner argues that his continued detention violates the Fifth Amendment Due Process Clause as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been detained for over six months and removal is not likely in the reasonably foreseeable future. *See* Am. Pet. at 10–11. He asks the Court to order his immediate release from custody and enjoin Respondent from re-arresting or re-detaining him absent full and strict compliance with federal law. *Id.* at 14.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas*, 533 U.S. at 687 (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that his detention violates his Fifth Amendment substantive due process rights because "[h]is removal period has already run, and there is no significant likelihood of removal in the reasonably foreseeable future." *See* Am. Pet. ¶ 41. Petitioner similarly asserts that his detention violates 8 U.S.C. § 1231(a)(6) because his "removal is not reasonably foreseeable," so "his detention surpassing six (6) months does not effectuate the purpose of the statute." *See id.* ¶ 43–44. Petitioner also claims a procedural due process violation, alleging that he was detained without notice or explanation. *See id.* ¶ 45–46. And Petitioner lastly asserts that Respondent "violate[d] the *Accardi* doctrine, which requires agencies to follow their own binding regulations" because they failed to timely secure his removal and conduct post-order custody

reviews as required by federal regulations. *See id.* ¶¶ 50–54 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).[1] The Court addresses each argument in turn.

### I. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 and his detention comports with due process.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). But the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C).

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. As this Court has explained, "[t]o avoid reading the statute as violating the Fifth Amendment Due Process Clause and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a 'presumptively reasonable

---

[1] While the parties do not raise the issue of jurisdiction, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). While there are certain jurisdiction stripping provisions that may preclude judicial review such as § 1252(g) and § 1252(b)(9), the Court's independent review of the record reveals that none are applicable here. *See e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287-MMH-MCR, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined."); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Because Petitioner "is not challenging his removal proceedings—he is challenging the antecedent detention," the Petition is squarely within the Court's jurisdiction. *See Hernandez v. Noem*, No. 2:26-CV-515-KCD-NPM, 2026 WL 809576, at *2 (M.D. Fla. Mar. 24, 2026).

period of detention,' and that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) (quoting *Zadvydas*, 533 U.S. at 701).

Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Here, Petitioner's *Zadvydas* claim fails because while he has been detained for more than six months, there is a significant likelihood of removal in the reasonably foreseeable future.

***a. Petitioner has been detained for more than six months.***

The parties do not dispute that Petitioner has been in custody for over sixth months, since November 12, 2025. *See* Am. Pet. ¶ 25; Resp. at 7 n.4 ("Petitioner has been in custody since November 12, 2025."). However, Respondent argues that Petitioner's *Zadvydas* claim nonetheless fails because (1) his Petition is premature "as his functional detention period . . . is only 172 days,"[2] (2) "deportation is foreseeable," and (3) his "refusal to cooperate with efforts to remove him toll the six-month period set forth in *Zadvydas*." *See* Resp. at 5–6, 9. Respondent argues that "by refusing to agree to be removed to Mexico, Petitioner has prolonged his detention and is hindering

[2] In *Akinwale v. Ashcroft*, the Eleventh Circuit observed that by moving for a stay of deportation, Petitioner "interrupted the running of time under *Zadvydas*." 287 F.3d 1050, 1052 n.4 (11th Cir. 2002). Here, Petitioner's removal was stayed by court order for eleven days, from November 21, 2025 through December 1, 2025. *See* Resp. at 7 & n.4. Respondent argues that this eleven-day period should thus be subtracted from Petitioner's total time in custody when he filed his Petition to calculate the relevant time in custody under *Zadvydas*. *See id.* Regardless of whether the relevant period of custody is 172 days or 183 days, the Court finds significant likelihood of removal in the reasonably foreseeable future, so Petitioner's *Zadvydas* claim fails on that basis. The Court therefore declines to address whether and how the stay of Petitioner's removal impacts Petitioner's relevant time in custody. *See Busby v. I.R.S.*, No. 96-6566-Civ, 1997 WL 364507, at *2 (S.D. Fla. Feb. 23, 1997) ("Because the [C]ourt finds this argument dispositive, it does not address [Respondent's] other arguments."). The Court also finds it unnecessary to reach Respondent's arguments that the Petition should be dismissed based on 28 U.S.C. § 2244(a) or failure to exhaust administrative remedies. *Id.*

his removal," such that "the six-month period under *Zadvydas* is tolled." *See id.* at 10–11, 13. Petitioner pushes back against the assertion that he failed to comply with Respondent's efforts to remove him to Mexico because "Respondent's evidence does not actually specify how—if at all—one alleged missing signature has prevented his removal." Reply at 1.

Petitioner was first presented with a Notice of Removal on February 12, 2026. *See* Resp. at 3; Notice of Removal, dated Feb. 12, 2026, [ECF No. 9-7]. Respondent does not contend that Petitioner refused to sign this first Notice. *See* Resp. at 3. However, Petitioner later refused to sign two Notices of Removal to Mexico—first, on May 26, 2026, and again, on July 27, 2026. *See* Notice of Removal, dated May 26, 2026, [ECF No. 9-14]; Notice of Removal, dated July 27, 2026, [ECF No. 17-1] at Ex. B.[3] And on June 2, 2026, Petitioner was provided with a Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), which made him aware that his refusal to comply with the order of removal would extend the removal period. *See* Resp. at 4; *see* Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), dated June 2, 2026, [ECF No. 9-15].

Respondent argues that Petitioner's two refusals to sign Notices of Removal to Mexico toll the removal period. *See* Suppl. Decl. Resp. at 4. Respondent contends that this case is factually identical to *Dumont Rodriguez v. Miami ICE Field Off. Dir.*, in which this Court found that the petitioner thwarted his removal and thus tolled the removal period by refusing to sign two notices of removal and a notice of failure to comply. No. 26-23664-RAR, 2026 WL 2568545, at *4 (S.D. Fla. Aug. 31, 2026); *see* Suppl. Decl. Resp. at 5–6.

[3] The Court notes that Petitioner filed a Supplemental Declaration on July 30, 2026, [ECF No. 12], in which he attests, "On July 27, 2026, an ICE official asked me whether I wanted to go to Mexico, and I said 'yes' but I asked what documents could ICE give me for Mexico to accept me and allow me to remain there. They told me that they could not give me any documents for Mexico . . . [and] the only options at this point were for Trump to release me or for a federal judge to release me." [ECF No. 12-1] at ¶ 1. But in its Response, [ECF No. 17], Respondent attaches a Notice of Removal, dated July 27, 2026, that Petitioner refused to sign, *see* [ECF No. 17-1] at Ex. B.

But in *Dumont Rodriguez*, the petitioner refused to sign Notices of Removal presented to him during the six-month detention period found to be presumptively reasonable in *Zadvydas*. *See* 2026 WL 2568545, at *4. Here, Petitioner was not presented with the Notices of Removal that he refused to sign until he had already been detained for more than six months. Petitioner was first served with a Notice of Removal to Mexico on February 12, 2026, but Respondent does not argue or present evidence that Petitioner refused to sign this document. *See* Resp. at 3; Notice of Removal, dated Feb. 12, 2026, [ECF No. 9-7]. By the time Petitioner was served with the Notice of Removal that he refused to sign on May 26, 2026, the six-month presumptively reasonable period of detention had expired. Because Respondent does not argue or present evidence that Petitioner refused to comply with removal efforts *before* the six-month period had expired, the Court declines to toll the removal period and therefore finds that the first prong of *Zadvydas* is satisfied. *See Iglesias Perez v. Warden, Fed. Det. Ctr. Miami*, No. 26-CV-25485-JB, 2026 WL 2522886, at *4 (S.D. Fla. Aug. 27, 2026) (declining to toll the removal period where the only evidence of Petitioner's failure to comply with removal efforts was his refusal to sign a Notice of Removal to Mexico served over nine months after Petitioner was detained).

***b. There is a significant likelihood of removal in the reasonably foreseeable future.***

While Petitioner's recent refusal to cooperate with removal efforts does not toll the removal period, it nonetheless impedes his ability to show that there is no significant likelihood of removal in the reasonably foreseeable future. The six-month presumption of reasonableness "does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, to state a claim under *Zadvydas*, Petitioner "must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at

1052. If the Petitioner makes this showing, "the burden shifts to Respondent[] 'to respond with evidence sufficient to rebut that showing.'" *Rodrigues Gomes v. Warden, Krome N. Serv. Processing Ctr.*, No. 26-CV-25687-JB, 2026 WL 3025542, at *4 (S.D. Fla. Oct. 8, 2026) (quoting *Akinwale*, 287 F.3d at 1052).

Petitioner emphasizes that given the current state of diplomatic relations between the United States and Cuba, his "deportation to Cuba is less likely now than at any time in recent memory." Am. Pet. ¶¶ 30–31. In his Reply, Petitioner argues that "other than issuance of a 'notice' of removal to Mexico, Respondent has not shown any evidence of Mexico's willingness to accept Petitioner other than a bare assertion from a deportation officer that Mexico accepts deportees on a case-by-case basis." Reply at 1.

Respondent appears to concede that removal to Cuba is currently unlikely but argues that "even if removal to Cuba is not foreseeable, because Mexico is accepting Cuban nationals, removal to Mexico is foreseeable." Resp. at 11. Respondent has provided a sworn declaration of ICE Deportation Officer Ricardo Herrero ("Herrero Declaration"), which says that "Mexico routinely accepts Cuban nationals for removal without a need for travel documents," but "Petitioner must sign the Notice of Removal prior to ICE [Enforcement and Removal Operations ("ERO")] nominating him for removal to Mexico." [ECF No. 17-1] at ¶ 39. The Herrero Declaration further states that, "Once Petitioner signs the Notice of Removal and otherwise cooperates with ERO's efforts to remove him, Petitioner is expected to be removed within weeks of such cooperation." *Id.* ¶ 41.

The Eleventh Circuit has consistently held that petitioners who fail to cooperate with removal efforts cannot show that there is no significant likelihood of their removal in the reasonably foreseeable future. In *Vaz v. Skinner*, the Eleventh Circuit denied the habeas petition of a petitioner who had refused to voluntarily sign his travel document or inform Brazil that he

was willing to return. 634 F. App'x 778, 780 (11th Cir. 2015). The court reasoned that because Petitioner was responsible for thwarting his removal, he could not show that there was no reasonable likelihood that he would not be removed in the reasonably foreseeable future if he cooperated with removal efforts by voluntarily signing the travel document. *Id.* Similarly, in *Oladokun v. U.S. Atty. Gen.*, the court found that the petitioner could not show that there was no significant likelihood of his removal in the reasonably foreseeable future where his "non-cooperation [was] the only barrier to removal." 479 F. App'x 895, 897 (11th Cir. 2012); *see also Vandi v. Ripa*, No. 22-CIV-21162-RAR, 2022 WL 2709109, at *2 (S.D. Fla. June 3, 2022) (holding that because the petitioner's own actions caused a delay, he could not show that removal was not reasonably foreseeable).

Similarly, here, Petitioner is refusing to cooperate with removal efforts by repeatedly refusing to sign Notices of Removal to Mexico, which are necessary for ICE ERO to effectuate his removal to Mexico. Indeed, when "'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' [] he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)). As such, Petitioner cannot meet his burden of showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[4]

[4] The Court notes that Petitioner filed a Notice of Supplemental Authority on August 30, 2026, [ECF No. 13], citing *Gonzalez Triana v. Mia. ICE Field Off. Dir.*, in which another court within this District held that "Respondents fail to explain what impact, if any, Petitioner's alleged failure to sign the Notice of Removal has on his removal to Mexico, and thus, the Court will not find that Petitioner's alleged failure to sign was an attempt to thwart his removal." No. 26-25177, slip op. at 6 (S.D. Fla. Aug. 14, 2026). But unlike in *Gonzalez Triana*, Petitioner was provided with a Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), which made him aware that his refusal to comply with the order of removal would extend the removal period. *See* Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), dated June

Petitioner's recent hospitalizations, chronic conditions, or increasing triglyceride levels do not change this conclusion. On October 21, 2026, Petitioner filed a Notice ("Notice"), [ECF No. 25], attaching medical consultation notes from October 22, 2025, [ECF No. 25-1]. The Notice reports that Petitioner has undergone two hospital stays while in custody—from July 30 through July 31, 2026, and then again from September 7 through September 9, 2026. *See* Notice at 1. The Notice and attachment further state that Petitioner's medical history includes several chronic conditions and that "[r]ecent communications with Petitioner's family members indicate that he is undergoing an acute increase of his triglyceride levels." *See id.* On November 2, 2026, Petitioner filed a Motion for Expedited Consideration, [ECF No. 28], reporting that Petitioner was re-hospitalized due to his elevated triglyceride levels. However, Petitioner's submissions do not argue or present any evidence that his recent hospitalizations, chronic conditions, or increasing triglyceride levels decrease the likelihood of his removal in the reasonably foreseeable future.

Further, Respondent argues that regardless of Petitioner's recent hospitalizations, his removal continues to be likely. In Respondent's Supplemental Declaration Response, which was filed on September 11, 2026, Respondent contends that, "[g]iven that Petitioner has been discharged from the hospital, ICE ERO will continue efforts to remove Petitioner to Mexico pursuant to his administratively final order of removal." Suppl. Decl. Resp. at 3. This contention is supported by Officer Herrero's sworn declaration. *See* Herrero Decl. ¶ 38. Respondent further states that "[a]s of September 11, 2026, Petitioner has been medically cleared to travel by the ICE ERO Health Service Corps." As such, Petitioner's medical conditions and recent hospitalizations

---

2, 2026, [ECF No. 9-15]. Petitioner's Notice of Supplemental Authority also cites *Olivera Loaces v. Mia. ICE Field Off. Dir.*, in which another court within this District found an ICE deportation officer's declaration unreliable for reasons that are not present in the instant case. No. 26-24134, slip op. at 8 (S.D. Fla July 16, 2026).

fall short of showing good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.[5]

Accordingly, because the second prong is not met, Petitioner's *Zadvydas* claim fails. However, if Petitioner complies with removal efforts and his detention continues, he remains free to file a new petition seeking relief under *Zadvydas* demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1050 ("Because circumstances may ultimately change in Akinwale's situation, we affirm the dismissal without prejudicing Akinwale's ability to file a new § 2241 petition.").

**II. Petitioner's procedural due process and *Accardi* claims also fail.**

In addition to his *Zadvydas* claim, Petitioner revives several arguments that he also raised in his previous petition. First, Petitioner claims a violation of procedural due process because "ICE detained him without prior notice, without alleging any violation, without providing a written explanation, and without affording [him] an opportunity to contest the revocation," and "[h]e has also not received timely post-order custody reviews[.]" *See* Am. Pet. ¶ 46. Second, Petitioner claims that Respondent violated the *Accardi* doctrine by failing to follow its own binding regulations—namely its regulatory obligations to "secure the noncitizen's removal during a 90-day removal period . . . [,] conduct a post-order custody review before the 90-day removal period expires if the noncitizen's removal cannot be accomplished . . . [and] conduct a subsequent 180-day review." *Id.* ¶¶ 50–52.

[5] The Court notes that Petitioner filed a Notice of Supplemental Authority on October 19, 2026, [ECF No. 24], citing *Portuondo v. Mia. ICE Field Off. Dir.*, in which another court within this District "considered the habeas petitioner's medical needs in granting his immediate release." *See* [ECF No. 24] (citing No. 20-21543 (S.D. Fla. May 7, 2020)). However, *Portuondo* analyzed the petitioner's medical vulnerability during the COVID-19 pandemic—a context that is uniquely distinct from the instant case. *See Portuondo v. Mia. ICE Field Off. Dir.*, No. 20-21543, slip op. at 10 (S.D. Fla. May 7, 2020).

As Judge Dudek pointed out in his order denying Petitioner's earlier petition, "it's not entirely clear that Gonzalez is entitled to a freestanding due process analysis at this time" because "'the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation.'" *Gonzalez v. Warden of Alligator Alcatraz*, No. 26-274, slip op. at 13 (M.D. Fla. Mar. 30, 2026) (quoting *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024)). But even if a freestanding due process analysis were warranted, Petitioner's challenge nevertheless lacks merit. Petitioner is "a noncitizen subject to a final, unexecuted order of removal," even though he was previously released on an OSUP. *Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *6 (M.D. Fla. Mar. 10, 2026). When Respondent revoked Petitioner's OSUP on February 12, 2026, they provided Petitioner the proper procedural protections in doing so—by giving him a Notice of Revocation of Release, an informal interview regarding the reasons for the revocation, and an opportunity to respond. *See id.*; Resp. at 3.

Lastly, under the *Accardi* doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (citation modified). Here, Petitioner bases his *Accardi* challenge on the fact that he was detained for longer than the removal period and failed to receive post-order custody reviews at the 90- and 180-day marks. *See* Pet. ¶¶ 50–52. But as this Court has observed, even if Petitioner could show that Respondent deviated from its own regulations, "where there is a continued statutory basis for Petitioner's detention, release is not warranted by mere deviation from agency regulations." *Rodriguez Dominguez v. Fed. Det. Ctr.*, No. 26-CV-25853-RAR, 2026 WL 3121379, at *5 (S.D. Fla. Oct. 19, 2026).

## <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Noslen Sendra Gonzalez's Amended Petition for Writ of Habeas Corpus, [ECF No. 7], is **DENIED**.

2. Petitioner's Motion for Expedited Consideration, [ECF No. 28], is **DENIED as moot**.

3. All deadlines are **TERMINATED**.

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of November, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**